All rise. This court is now in session. You may be seated. The clerk will call the next case. 315-0370, Eagle, a native of Illinois, employed by Mark Haswell, v. Demetrius Phillips, a family of Garland. Mr. Munt? Munt, you may proceed. And may it please the court, counsel. Your Honors, Demetrius Phillips was charged with first degree murder and placed under arrest. He was then taken to the Rock Island Police Department where he was interrogated without counsel present. This interrogation violated his Sixth Amendment right to counsel and was also obtained involuntarily because the police used coercive tactics in order to get him to make a statement. The Sixth Amendment attaches upon the filing of charges. In this case, an information was filed and the police obtained an arrest warrant and arrested Mr. Phillips and brought him to the Rock Island Police Department. At that point, he had a Sixth Amendment right to counsel. He did not have counsel in this interrogation. Why not? He did not ask for counsel. He was also never told that he had a Sixth Amendment right to counsel. Did he sign any waiver? He signed a pre-printed, police-supplied Miranda Waiver of Rights form. That's an important fact. You're leaving out. It is. So he waived. He signed a Miranda Waiver. Yes. A Miranda Waiver does not necessarily waive Sixth Amendment rights. What needs to be done? The case law is not clear on that. That's a very good question. What your argument is, is that under Sixth Amendment, it's Miranda plus, right? Yes. Well, what's the plus? I don't know exactly what it is in the Supreme Court case law. The case law says we don't know exactly what the plus is, but the Sixth Amendment is in the United States Constitution. It says you have the right to counsel. There's ample case law saying at critical stages, a person has an absolute right to have counsel present. And post-charging interrogation is undoubtedly a critical stage of the criminal proceedings. And in this case, when Demetrius was brought in, they informed him that he was charged with the first-degree murder of his child. And he immediately started crying. And I believe the detective referred to it as wailing. And it's borne out by the video as well. He's distraught. He's crying. And while this is happening, Detective Amir Soni, he reads him the rights and says, we've been through this before, and reads them, and then he says, I need you to sign this, and puts the form in front of him. First of all, Demetrius did not need to sign that. The detectives wanted him to, but that was his choice. They didn't tell him that. They said, I need you to sign this. And they also left out the part that when you sign this, you're waiving these rights. Amir Soni said, when you sign this, that means you understand your rights. Understanding and waiving are two very different things. They did not tell him that. In addition, prior to that, the detective said, we're here to talk about what happened with your son. We have things we need to talk about. There was an implication that a conversation was going to be had. And then, in addition, a signature on a Miranda waiver in Illinois should not be sufficient to automatically waive the Sixth Amendment right. In fact, the Supreme Court Rule 401A provides that any waiver of counsel shall be in open court. And any waiver of counsel is a clear statement in the rule. And the reason Rule 401A exists is to provide additional protections to the Sixth Amendment and the statutory right to counsel in Illinois. So what procedurally should have done, except in your argument, that it has to be before court? We have an arrest from an indictment, is that correct? It was an information. Well, okay. But we had a formal court proceeding somehow, one way or the other. Grand jury, whatever, information that led to his arrest. Yes. Okay, so he's in custody. Yes. So what, in your view, should be done at that point, except in your argument, it has to be in open court? Well, in my view, can they talk to him? Or do they have to bring him before a judge? That's the interesting thing in this case, Ron. The police, he was charged, then the police brought him in for interrogation before he was taken before a judge. Right. He was taken before a judge the following day after they extracted this statement from him. And the rules of the shell being open court, that presents an interesting procedural, practical problem in police departments. Which is why it may or may not. It may be that you can't do anything except hold the suspect. I mean, a post-charging interrogation is unusual, and usually the police interrogate them before they file charges. Yeah, well, that's an investigatory function of the police at that point. Yes. I mean, we're not into Sixth Amendment then. Exactly. Which is why this is a unique situation and relatively unusual. The bottom line is Rule 401A provides additional protections to waiving the Sixth Amendment right to counsel. And it should not be easier to waive a Sixth Amendment right to counsel in a police station when there is no one looking out for the defendant's rights. Whereas in a court, the rule provides in court, but in court there is a judge, a neutral arbiter of the law, who is there to protect the rights of both sides. And even when it's in court, the rule very specifically says these admonishments must be given. These procedures must happen. It seems like a perversion of those protections to say, what if you do it in a police station? You don't need to do all of these things. And so it's for that reason that his signature on the Miranda Rights Waiver should not be viewed as an automatic waiver of his Sixth Amendment right to counsel. And as I said before, the police used this situation where he had been charged so they could tell him, you've been charged, you have a million-dollar bond, mandatory life in prison, but he hadn't been taken to court yet where an attorney would have been appointed for him. And in addition, the statement itself was involuntary. It was obtained through extensive coercion and improper police tactics, that situation. Demetrius was told more than a dozen times, you need to talk to us, you have to talk to us, you have to tell us what happened. The police used, the phrase they used is a guilt trip. They repeatedly said, God will not forgive you until you come clean. Lyric will not forgive you until you come clean. And for an 18-year-old man who is grieving the loss of his son, to make those kind of invocations and say that to someone is highly coercive and is absolutely going to begin the process of breaking him down emotionally. In addition, the police told him repeatedly, we're here to help you. If you come clean, if you show remorse, that's going to help you out in the long run. They make reference to judges like it when people show remorse. They don't use the word, you know, we promise you things will get better, but that's the clear implication is, you help us out, that will help you out later. And in fact, they take it a step further and Hoffer told him, the charge could change if you tell us the truth. But he had already been charged with first-degree murder. Sergeant Hoffer doesn't make the charging decisions, the prosecutor does. And I don't know when the last time, after an interrogation, a sergeant went to the prosecutor and said, hey, that was a really, really heartfelt interrogation. I think maybe we should knock these murder charges down to something else. That's not really something that happens. And again, the police don't have the power to do that. And they tell them repeatedly, if this was an accident, that will make a big difference. They push the accident scenario. Starting at about noon, so approximately an hour after the interrogation began, Detective Mirosony starts pushing, maybe it was an accident, we're just frustrated, it was an accident. They push this accident theme pervasively throughout this entire interrogation. And they take it even further. Hoffer said, not telling them what happened and not showing them remorse, I'm sorry, it was Mirosony, he said, not telling us what happened will result in harsher punishment, implied will result in harsher punishment, saying a judge will look back on this interview and see that you didn't show remorse. And then Hoffer told him, do you know what happens to baby killers in prison? And it's a suppression hearing, they couched that in terms of he was talking about showing remorse. And sorry, that's nonsense. The statement was not, if you don't show remorse, they kill baby killers, but if you do, they don't. No, that's not what he said. He said, if you go to prison as a baby killer, your life won't be as long. That's a clear threat, that as a baby killer in prison, you will be killed. That is highly coercive. Well, was that part of feeding the story of an accident? There's two competing, there was an accident, and then there was the, these are the serious consequences you will face, then the accident is sort of, unless you tell us it was an accident, maybe it will be easier for you if it's an accident. And then this accident scenario was specifically fed to him by Detective Mirosony. Nearly word for word, he says, maybe we just tossed him on the bed, and he bounced and hit his head on the dresser and fell on the floor. And when he said that at the time, Demetrius said, no, that's not what happened, and they go for a while, and then about an hour, just under an hour after Detective Mirosony offered that scenario, when Demetrius was broken down, his will was broken, and he finally realized the only way to make this interrogation end was to tell them what they want to hear, the scenario he gave back was, tossed him on the bed, he bounced, hit his head, fell on the floor. Nearly word for word, what Detective Mirosony fed to him. But the most important, and just prior to that, Sergeant Hufford said, make me believe it was an accident, make me believe it was an accident. So he did, he did exactly what they asked him to do. The problem is, that's not what happened. They knew it, we know it looking at the record. The only one who didn't know it was the trial court judge. Detectives came in after that and said, you're not telling us the whole truth. There's more than one injury. That doesn't explain these injuries. And importantly, when Demetrius' mother came in, and she said, what happened? He said, they made me tell them something. She said, is it true? He shakes his head, no. And then she says, are you sure? He says, yes, Mom. He immediately told her, I told them something, but it's not true. And then at the preliminary hearing, Detective Miroselny testified that he talked to the state's expert, Dr. Petrak, and she said, no, that scenario would not explain these injuries. At the trial, the prosecutor said that he was minimizing, that his, what they call a confession, admits to harming him, but he's minimizing. He won't admit the whole truth. And again, at the trial, Dr. Petrak testified, this scenario does not account for these injuries. It is not what happened in this case. But as I stated, the trial court made it clear in multiple statements that he believed what happened is exactly what he said in the video. He believed it was what the judge said. But that's not correct. It's the medical evidence shows it's not correct, and the state's expert. The medical evidence shows much more severe. That's correct. But that, but you can't just say it's minimizing, because if it was minimizing, it's because the police asked him to minimize, the police offered up this minimizing scenario, and he repeated exactly what they asked him to do. Demetrius wasn't the person minimizing. The police were minimizing, and he parroted back exactly what they asked him to do. But again, the police knew it wasn't true at the time of the interrogation. The prosecutor knew it wasn't true at the time of trial. But at the supposition hearing, the trial court believed it's true, and his findings of fact at the supposition hearing are just simply contradicted by the video. What charge, given the statement, you know, you say it was fed, and you said it was adopted, and then you put it into the context of everything will be less severe for you if it's an accident, right? I mean, that's kind of the theme you're giving us that we're going to see on this case. What, then, would be the appropriate charge? Manslaughter? I think involuntary manslaughter is a possibility, because as a discussion... I mean, accepting that, you know, as a confession. Yes. If you take the statement as 100% true, as I point out in Issue 3, that could square with the finding of a reckless mental state, which would be involuntary manslaughter, or depending on other situations, it could be aggravated battery. It could be battery. It could be... How close? Two minutes. Thank you. Yeah. A much lesser charge. Yes. If you take the statement as true, it certainly does not show an intentional murder, and I don't believe it even shows a knowing murder, in that he didn't knowingly cause bodily harm or the potential of great bodily harm by tossing his child onto the bed, if that is, in fact, what happened. But, again, the medical evidence seems to say that's not what happened. And, as I said, the trial court's findings are contradicted by the video. So taking that confession, a defense attorney could go and structure a plea deal? Or if the confession were... if the statement was suppressed, I believe the course of this trial would have been dramatically different. Well, if the statement's suppressed, that's a home run. Well, sure, but it's... I'm just talking about the reality of criminal prosecutions. Sure. I believe the trial court referred to it, I believe it was at sentencing, at the end of sentencing, and he said, now you chose to pursue a trial theory that none of this happened, it was false, but had you said, no, it was an accident, I didn't mean to, I'm sorry, maybe things would have gone differently. Even the trial court was saying, this was close, first degree murder, that's what the jury said, I'm not going to... That's what the trial judge said, correct? Yes. You had an earlier statement. Yes. Will the record show any plea negotiations? Not that I'm aware of, not on the record that I'm aware of, but... I wanted to ask you a brief question, backing up to the conversation that I think it was Marisoni had when he presents the standard form to him. He makes a statement about, you know what this is, you've been here before, or something, because they've talked to him two or three times, right? Four at least, I believe. But none of the other times had he already been charged, right? Yes, all of those were before he was charged. Okay, so he says, we've been through this before, you've done this before, would all, I guess, suggest, we've questioned you before, but now he's charged. I mean, I'm just trying to figure out how he, because he doesn't verbally acknowledge that he understands that, or they don't say, do you want to represent yourself? I mean, they aren't saying those kinds of words, like, you know, are you sure you want to be your own attorney? I mean, like, it happens in open court, you know? Yeah, I agree with you, Your Honor. The state argued in this brief that he had waved Miranda on four prior occasions, so he knew it, he did it again, but you bring up a good point. Those prior interviews were before he was charged. Now he's charged, and they know he's charged, yet the detective said, you've signed this before, it's a single thing, making it seem like it was going to be another one of those kind of interviews, except that it wasn't, because he was charged, and this one was accusatory and trying to obtain an inculpatory statement. And the Sixth Amendment had attached. And he had a Sixth Amendment right to counsel, which they did not tell him, and it is not in the form. There are no other questions? So your plus really is, if I may summarize your argument, your plus is that when we're in the Sixth Amendment territory, Miranda is probably not sufficient because anything akin to Miranda has to be given in open court. Is that kind of your argument? Or at least some additional acknowledgement that you have been charged, you have the absolute right to have counsel appointment for you, with you. They say those things in there, but as we've talked about, the case has not exactly clear what the plus is. What does they say those things? The police, the Miranda one. It has, you have the right to an attorney before question. That's right. If you're saying the plus under Sixth Amendment, you're trying to say the setting in which that occurs has to come from a different person. Well, I'm analogizing to Rule 401. It says any waiver should be in open court. Correct. I don't know if I'm specifically advocating that all police interrogations must then happen in open court. No, that's not what I'm saying. I didn't say that. But a waiver. Is that your argument, the waiver? A post-charging waiver? Perhaps. That's what the, if the rule says any waiver of counsel, and if the Sixth Amendment right is attached, then maybe that's what the rule says. It's an open question. Okay, right. I'm just trying to understand the argument. It's okay, thank you. Thank you, Your Honor. Thank you, Mr. Brown. Mr. Oster? May it please the Court? Counsel? The defendant argues the trial judge should have granted the motion to suppress statements to the police. And this issue is being reviewed for plain error because the defendant did not preserve the issue below, of course. And initially, people note that the defendant asserts the trial judge's factual findings that the motion to suppress were based entirely on documentary evidence. And the defendant has requested de novo review. Detective Meyerson, Sergeant Hufford, and the defendant all testified at the motion hearing. Therefore, the record contradicts the defendant's claim that the trial judge decided the motion entirely on documentary evidence. This Court should review the denial of the motion to suppress under the two-part standard review stated by Ludeman, which people have cited on page 16 of our brief. One thing the defendant is arguing is that the information in this case was filed before the arrest warrant was filed. But there's no indication that is accurate. Both were filed on the same day in the record, and there are no timestamps. It makes equal sense to say that the arrest warrant was issued, and then they had this fifth interview, and then after they got more information, the confession in this case, that they then indicted him. Or, in this case, information. So there is no clear showing in the record that the information came before this last interview. Now, the defendant, of course, is arguing this confession was in violation of the Sixth Amendment right to counsel. And, of course, Detective Meyerson read the Miranda rights to the defendant again, this time for the fifth time, at the beginning of this interview issue. The U.S. Supreme Court in Illinois v. Patterson held that by providing the Miranda rights warnings to a defendant, the people have met the burden to advise a defendant of his or her right to counsel under the Sixth Amendment. And Patterson went on to say that where a defendant has been informed of his right to an attorney via the Miranda warnings, the officers have conveyed, quote, some and substance of the rights that the Sixth Amendment provided to him. The First District in Lynch followed Patterson and held the defendant's waiver of Miranda rights is sufficient to protect the defendant's Sixth Amendment right to counsel. Therefore, under Supreme Court and Illinois court precedent, defendant's Sixth Amendment right to counsel was not violated in this case. What about the setting? I mean, the argument opposing counsel is that the waiver has to be done in open court. Well, that's, of course, under Rule 401A. And the defendant, in his brief, cites Peabody Campbell for the proposition that Rule 401 applies to both Sixth Amendment right to counsel and to statutory right to counsel. But Campbell clearly applied Rule 401A to trial proceedings occurring after the defendant had been formally charged with a crime that was punishable by imprisonment. Of course, this crime was punishable by imprisonment. And as Peabody pointed out in a brief, Article IV of the Supreme Court rules, which Rule 401 falls under, is clearly titled Rules on Criminal Proceedings in the Trial Court. The defendant's attempt to have this court expand Rule 401A to include police interrogations has no support in the language of the rule itself. And the defendant has not cited any authority at all holding that Rule 401 applies to police interrogations even if the defendant had been charged. And courts have held that a deprivation of counsel in a case where a trial judge does not impose a sentence of imprisonment is not a Sixth Amendment violation. So you can still have a trial and end up with a sentence other than imprisonment. And if that person is not represented by counsel, it's not a violation of Sixth Amendment. But this questioning, I thought, began with Demetrius being informed he was charged with murder. He was shown one of your arrest warrants, which also included a $100,000 bond, but he was not told that there had been an indictment or information in this case. He wasn't brought in for a questioning. You said they might have decided to charge him after this questioning, but he was shown the warrant. The arrest warrant, yes. And told he was charged with murder at the beginning of the video. Right. That's correct. But they didn't show him any information, so we're not positive from the officer's use of the word charge. And he may have been charged by an arrest warrant for this rather than by information through, you know, the state's attorney's office and such. Would that be an inappropriate verb? Well, the appropriate word for a charge, of course, would typically indicate an information or indictment. You're absolutely correct on that case. And also, during the course of the questioning, they told him that the charges could be reduced at some point. Well, that's, I mean, in this case. To make it clear he was charged. As counsel mentioned, there certainly could have been other charges that could have been filed depending on what the defendant said in this interview. If he had picked up on, let's say, one of the officers mentioned, I think it was Detective Meyerson mentioned something about were you playing with a baby and it slipped out of your hands or something. There are a bunch of scenarios that were presented to the defendant. And if he finally said, well, that's really what happened. You know, I really was playing with the child. I was afraid to say anything. I didn't want to, you know, this to come back on me. He could have been charged with potentially involuntary manslaughter, potentially battery for something he did that caused the harm, or just. But he was told first degree murder. Well, this was first degree, yes. First degree murder. True. That's correct. That's correct. I guess the point, understanding what the Patterson case says, but our rule regarding being advised in open court that you have to waive those is because the process is a little bit different where there is no just signing it. I mean, you don't come into court and show up, you know, no attorney and the judge, oh, is he signing this? I mean, routinely, you know, you do not want to represent yourself. You're going to be held to the same standard as an attorney. You know, this isn't in your best interest. I'm going to be emphatic. And over and over and over and individuals say yes, they want to represent themselves. They say, you know, and that's denied. And then, you know, sometimes I'll let them have, they give them backup counsel. All these other things that happen and it's just a matter of venue. I mean, it's just a matter of, well, if he's in the police station, he doesn't get those things. But if he is actually in a courtroom, then he gets better protections because, you know, I mean, I understand that there are, you know, times that they're saying, well, it does suffice because what's the difference if you're going to interrogate somebody post-indictment or pre-indictment? But it doesn't seem in Illinois that we think that that is, that we've added some additional protections. And we say, no, this is such an important thing. It's different than you're not charged with anything and maybe you feel, well, I'm truthful. I don't need an attorney. But after you're charged with something, then all of the rules, everything starts to apply then. He's not an attorney. How does he know that, you know, if he offers a statement that that is, you know, something that is as good as him testifying, you know, in court? Or, you know, all of these different safeguards that come in that are something that after you have that Sixth Amendment kicks in are a little bit different. I just, I don't understand if we do all of that in a courthouse setting for any offense that is, you know, punishable by jail and even for misdemeanor. I just, I don't understand why we do that then if it's fine not to, especially considering, you know, the serious offense. It applies to any offense, Your Honor, whether it was, you know, a lesser, a misdemeanor that can be, you can receive a sentence of imprisonment. Anytime you can receive a sentence of imprisonment, of course, your Sixth Amendment does apply. But the point of the Rule 401, which, you know, is our own rule here in the state, is that it is in a trial setting that you then have to waive counsel in open court. So when you're waiving counsel and you're saying you're going to represent yourself, that's for trial. Whereas under... Well, pre-trial proceedings, I mean, you know, it would be, he was going to represent himself... True, but those are all trial proceedings. For, you know, a motion to suppress. Sure. And... If we're at a trial proceeding, a pre-trial I will consider, I presume everyone considers pre-trial to be a trial proceeding. So at that point, yes, they definitely have the right to Sixth Amendment right to counsel. And then they have to waive counsel in open court. But that is a trial proceeding, not an interrogation by police. That's the difference when we're talking about Rule 401. But the time that they really need the counsel is when they're being questioned by the police. I mean, that's the time when the confessions are made. And when, by the time they get to trial, they're done. Because there's been a confession and that's the most compelling kind of evidence that there can be. And it seems, I understand what the U.S. and the Illinois Supreme Courts have said. But I think that it doesn't recognize and give enough credence or weight to the fact that it's during these police interrogations that so many of these trials are actually done. I understand your point of view, Your Honor. But we have to remember in this particular case, this was his fifth Miranda waiver. And there was no indication at any time that defended it. He didn't ask for counsel. He didn't say he wanted to end the interview. Nothing. He didn't say he didn't want to continue speaking. He didn't invoke any right that he had whatsoever, even though it's clear on the video that the detective read the Miranda rights to him, then handed him the form, and it says clearly on the top, waiver of rights. He signed that form. He had every opportunity to read it again. And he had made no attempt to invoke any of his rights. But he kept telling him, this is exactly what you've done before. But the times that he'd done it before, he hadn't been charged. Right. And if we ignore Supreme Court precedent regarding the Miranda warnings, suffice for Sixth Amendment rights also, then we might say that he should have had counsel. But we've got Illinois appellate court cases. We have United States Supreme Court cases, of which we cited more than just Patterson on our brief, that all say Miranda suffices to meet the warnings for Sixth Amendment, the right of counsel. And that's personally all I can go on, Your Honor. I'm new to the court. So one thing I don't know if I mentioned, the police interview, of course, is not a trial proceeding. We all understand that. And it's not a judicial proceeding at all. And the police had no authority to sentence anybody for anything. So therefore, Rule 401 does not apply in this case. Now, the defendant, in his brief, first issue, it was a B argument. He asserted his confession was involuntary, he was coerced, and the police overcame his will. And the trial judge reviewed the video of the interview and found that the tactics used by the police were appropriate. Trial judge noted the police had not offered defendant any promises of leniency, and they had not told defendant that the charge would be reduced if he confessed. These findings by the trial judge are not against the manifest weight of the evidence. But there are some things that are. The things that he rested his decision on were, number one, that when his mother asked him three times, did you do this or is this true, he didn't answer. And the failure to answer was consistent with a no or a yes. I can't remember which way he put it. The tape clearly shows that each time his mother asked him that question, he shook his head no. So the trial judge was finding that he had done something or not done something that he did. I looked for that myself, Your Honor, because there was an argument that he had shaken his head no. My review of it, and I did look carefully, as I'm sure the court did, it appeared to me that defendant was swaying, rather than going no and shaking his head. He was moving slightly left to right, but I personally did not see an actual no shake. And it's clear on the video that defendant did say to his mother, yes, I told the police that I did this to the child. He said, yeah, and then it said unintelligible after that. And if you look at the tape, what he said was, yeah, Mom, I didn't do anything to hurt him. The tape speaks for itself, Your Honor. I can't make an argument one way or the other. What is the standard of review when we have a tape? Well, if it's the tape only, and it's just clearly the only thing, the documentary evidence, with none of the testimony by the police officers or by the defendant, then of course documentary evidence alone, then you would be reviewing de novo. But that's not what we have in this case. It was a very long suppression motion hearing, and so we had all this testimony to back up what also was the motivation from the police officer. What were they thinking at the time when they made certain statements and such? And everyone was grilled fairly intensely during this motion hearing, of course. And so I believe you have to use the two-part standard of using manifest weight and de novo both in this particular case. In his reply brief, the defendant brings out a number of comments that he claims contradicted his right to remain silent and to not incriminate himself. And Sergeant Hufford, in particular, was a pressured defendant to say what really happened, and he consistently said the defendant needed to show remorse. And courts have held that the police may pressure and conjole, conceal material facts, and actively mislead a defendant during interrogations. And our Supreme Court, Martin, said that even deception on part of the police does not invalidate the confession as a matter of law. So the video shows that the officers did not say anything to the defendant that even implied that he did not have the right to counsel or that he did not have the right to remain silent. I know this period is about three and a half hours. What were the total of the other four interviews? I don't know, Your Honor. I don't believe that's a record in this case. I presume that there are videos that were taken of those because this is a murder investigation, but that's not a record, so I can't answer the question. The court has no other questions. I'll stand on my brief for other argument. Thank you, Mr. Austell. Thank you. Mr. Munn for rebuttal. I just have a few points, Your Honors. First of all, regarding the standard of review of the trial court's findings in this first hearing, there were witnesses at this first hearing, but they all testified about what happened on the video. It was saying, I did this, I did this. And so I believe, Your Honors, watching the video is sufficient to the documentary evidence standard that we discussed in the brief. The fact that everything that was testified to at this first hearing is about what occurred on the video. It wasn't about credibility determination, it was about who was right, who was wrong, anything like that. It was about what happened on the video. So I think the video speaks for itself. The de novo review, is that right? Yes, that's correct. Importantly, the state just said that the record is not clear that the information was filed before the interrogation. However, the state did not make that claim in its brief. In fact, it conceded that the Sixth Amendment applied with this interrogation. And I would posit that the record does establish that the information was filed first. First of all, the circuit court clerk's docketing page, I don't know what better to call it, the printout of all the documentaries, the very first one on there is information filed. The second one is arrest warrant filed. Whether or not that is ironclad proof, I think it is. But in addition, Detective Mirasone at this first hearing said that he showed him the warrant and the information. It seemed clear on the video that he had been charged and they told him he had been charged. My next point, counsel says that Rule 401 does not apply because it's in the trial court procedures section of the rules. The Series 400 of the Supreme Court rules is called trial court procedures. However, as this court is aware, Rule 402 can and does apply to police officers if they engage in plea negotiations that does not result in a plea, those conversations are not admissible in court. Rule 402F, and it's very clear in the case law that that does apply to police conversations with the defendant before they go to court. So the mere fact that the rule is part of the 400 series does not mean that it cannot apply in the trial court. And finally, it does not mean that it cannot apply in the police station. And finally, as your Honor was alluding to, when Demetrius' mother came in at the end, she says, is that true? He shakes his head and then she follows up with, are you sure? If he was swaying or did not answer her, she wouldn't have asked the follow-up question, are you sure? The mere fact that it was a follow-up question shows that he answered her initial question in some way and it's the defense position that he clearly shakes his head no in the video. If there are no other questions, Mr. Phillips would ask that this court find that his statement was inadmissible and that the trial court erred in denying the suppression motion and remand this for further proceedings. Thank you, Your Honors. Thank you, Mr. Roth. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. Right now, we'll take a recess until 115. All rise. This court shall stand to recess.